IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| Austin Wilkinson, on behalf of himself and all others similarly situated, | ) ) ) ) | |
| Plaintiffs | ) ) | **ORDER ON MOTIONS** |
| vs. | ) ) ) | Case No. 1:16-cv-011 |
| High Plains Inc. and Missouri Basin Well Service, Inc. d/b/a MBI Energy Services, | ) ) ) ) | |
| Defendants. | ) | |

Before the Court are the Plaintiffs' Motion for Partial Summary Judgment and the Defendants' Motion for Summary Judgment, both of which were filed on March 31, 2017. See Docket Nos. 47 and 59. The cross-motions for summary judgment have been fully briefed. See Docket Nos. 48, 60, 66, 71, 73 and 74. Also before the Court is the Plaintiff's Motion to Strike filed on May 12, 2017. See Docket No. 70. The Defendants filed a response in opposition to the motion on May 26, 2017. See Docket No. 80. The Plaintiffs filed a reply on June 6, 2017. See Docket No. 81. For the reasons set forth below, the Plaintiffs' motion for partial summary judgment is granted, the Defendants' motion for summary judgment is denied, and the Plaintiffs' motion to strike is denied.

I.  **BACKGROUND**

Defendant Missouri Basin Well Service, Inc. d/b/a MBI Energy Services ("MBI") is a fluid management logistics and well-intervention provider that was founded in North Dakota in 1979.

1

In 2011, MBI acquired High Plains, Inc. ("HPI"), also a North Dakota corporation. In June 2016, HPI officially merged with MBI. During the relevant time period, MBI and HPI served the Williston Basin and Rocky Mountain regions providing well-intervention services for their oil company customers.

The Plaintiffs were employed by Defendants as wireline operators. The Plaintiffs provided oil and gas well perforation services to the Defendants' customers in the oil and gas industry. The Defendants paid members of their wireline crews a base hourly rate plus overtime at one-and-one-half times the base hourly rate for hours worked over forty hours in a workweek. The Plaintiffs regularly worked in excess of 40 hours per week. The Plaintiffs also received bonuses that were not included in the regular rate used to calculate overtime. Bonuses were paid if the job was performed satisfactorily and with no safety issues. The bonuses, which are sometimes referred to as commissions, were calculated based on a percentage rate each individual operator received times the revenue they produced while on duty at a job site, as set forth on a job ticket.

Wireline operators were classified into two different crews: a pump down crew or a service/day job crew. The Plaintiffs primarily worked on pump down crews. A pump down crew typically consisted of three to four operators working under the supervision of one engineer. The crew drove the necessary vehicles to the job site. The Plaintiffs' job included the use of a fleet of pickup trucks, wireline trucks (also referred to as loggers), cranes, and associated equipment for completions, logging, pipe recovery, and related cased-hold e-line services. Except for the pickup trucks, most of these vehicles weighed more than 10,000 pounds. The wireline operators were required to maintain a commercial drivers license. The engineer was usually assigned a pickup which was used for many purposes, including transporting the crew to and from the job site at the beginning and end of each shift. One or two pickups trucks would be assigned to each job.

The Plaintiffs loaded and drove pickup trucks as part of their job duties, including to and from drilling locations. The Defendants kept no record of which vehicles were driven by which Plaintiffs or when. The Plaintiffs' job duties also included regularly making hotshot runs with pickup trucks running a tool or supplies to an oil site where a crew was working so that the crew could continue the job. Other job duties included driving pickup trucks to pick up parts, taking the pickups to get serviced and/or to get windshields put in, and transferring the vehicles from one of the Defendants' yards to another. The majority of the pickup trucks in the Defendants' fleet have a gross vehicle weight rating ("GVWR") of 10,000 pounds or less. See Docket No. 60-3. Because the Plaintiffs' work involved the use of vehicles which weighed 10,000 pounds or less as well as vehicles which weighed more than 10,000 pounds, their work is often referred to as "mixed fleet" operations.

The Defendants paid the Plaintiffs overtime at a rate of one-and-one-half the regular hourly rate, but excluded bonuses in calculating the hourly rate. The Plaintiffs contend the Defendants violated the Fair Labor Standards Act ("FLSA") and the North Dakota Administrative Code by failing to include bonuses in calculating the regular rates of pay used to calculate overtime premiums. The Defendants claim the Plaintiffs were exempt from the FLSA overtime requirements based on the Motor Carrier Act ("MCA") exemption. The parties have filed cross-motions for summary judgment on the FLSA claims.

II. **STANDARD OF REVIEW**

Summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, indicates that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. Davison v. City of Minneapolis, Minn., 490 F.3d

3

648, 654 (8th Cir. 2007); see Fed. R. Civ. P. 56(a). Summary judgment is not appropriate if there are factual disputes that may affect the outcome of the case under the applicable substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of material fact is genuine if the evidence would allow a reasonable jury to return a verdict for the non-moving party. Id.

The Court must inquire whether the evidence presents a sufficient disagreement to require the submission of the case to a jury or whether the evidence is so one-sided that one party must prevail as a matter of law. Diesel Mach., Inc. v. B.R. Lee Indus., Inc., 418 F.3d 820, 832 (8th Cir. 2005). The moving party bears the responsibility of informing the court of the basis for the motion and identifying the portions of the record which demonstrate the absence of a genuine issue of material fact. Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011). The non-moving party may not rely merely on allegations or denials in its own pleading; rather, its response must set out specific facts showing a genuine issue for trial. Id.; Fed. R. Civ. P. 56(c)(1). The court must consider the substantive standard of proof when ruling on a motion for summary judgment. Anderson, 477 U.S. at 252.

## III. LEGAL DISCUSSION

### A. FAILURE TO PLEAD DEFENSE

The Plaintiffs contend the Defendants have failed to plead the MCA exemption defense with sufficient particularity. The Court is unpersuaded. In their answer, the Defendants pled "[t]he Plaintiff and putative class members meet one or more exemptions from overtime pay under the FLSA and/or comparable exemptions under North Dakota law." See Docket No. 5, ¶ 53. While it is true that this affirmative defense does not expressly reference the MCA exemption or the statute under which it falls, 29 U.S.C. § 213(b)(1), this omission does not result in a waiver of the defense.

When reviewing a defendant's answer, courts within the Eighth Circuit are guided by the principle of "substance over form." Johnson v. Derhaag Motor Sports, Inc., No. 13-cv-2311, 2014 WL 5817004, at *9 (D. Minn. Nov. 10, 2014). That is, "while an affirmative defense must be asserted in a responsive pleading, it need not be articulated with any rigorous degree of specificity, and is sufficiently raised for purposes of Rule 8 by its bare assertion." Id. (quoting Zotos v. Lindbergh Sch. Dist., 121 F.3d 356, 361 (8th Cir. 1997)). "Neither a statute citation, nor the proper name of a defense is required in order to meet the Eighth Circuit's minimal pleading standard for affirmative defenses." Id. at *10. In addition, the Defendants' assertion of the defense at the summary judgment stage hardly comes as a surprise to the Plaintiffs. See Elliott v. Schlumberger Tech. Corp., No. 3:13-cv-79, 2015 WL 11393819, at *3 n.2 (D.N.D. Aug. 14, 2015) (stating that "if an affirmative defense is later raised in a manner that does not result in unfair surprise, failure to comply with [Rule 8] is not fatal"). The Court finds as a matter of law that the Defendants have properly pled the MCA exemption as a defense.

### B. STATUTORY SCHEME

The general rule under the FLSA is that an employer must pay employees one-and-a-half times their regular rate when they work more than forty hours per week. 29 U.S.C. § 207(a)(1); McCall v. Disabled Am. Veterans, 723 F.3d 962, 966 (8th Cir. 2013); Lang v. City of Omaha, 186 F.3d 1035, 1036 (8th Cir. 1999). However, there are several exemptions to the FLSA's overtime requirements, one being the Motor Carrier Act exemption. See 29 U.S.C. § 213(b)(1).

Under the MCA exemption, the overtime provision of Section 207(a)(1) of the FLSA does not apply to "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502

5

of Title 49." 29 U.S.C. § 213(b)(1). "The Secretary of Transportation may prescribe . . . maximum hours of service of employees of . . . motor carrier[s] and . . . motor private carrier[s]." 49 U.S.C. § 31502(b)(1) and (2). A "motor private carrier" is a person "transporting property by motor vehicle when . . . the property is being transported for sale, lease, rent, or bailment or to further a commercial enterprise." 49 U.S.C. § 13102(15)(C). It is undisputed the Defendants in this case are motor private carriers subject to the jurisdiction of the Secretary of Transportation.

In 2008, Congress passed the SAFETEA–LU Technical Corrections Act of 2008 ("TCA"), which narrowed the scope of the MCA exemption by replacing reference to "commercial motor vehicle" with "motor vehicle" in 49 U.S.C.A § 13102. See Pub. L. No. 110–244, Title III, § 305(c) (2008). The TCA also narrowed the scope of the MCA exemption by extending FLSA overtime protections to "covered employees." See Pub. L. No. 110–244, Title III, § 306(a) (2008). The TCA defines a "covered employee" as follows:

The term "covered employee" means an individual—

> (1) who is employed by a motor carrier or motor private carrier (as such terms are defined by section 13102 of title 49, United States Code, as amended by section 305);
>
> (2) whose work, <u>in whole or in part</u>, is defined—
>
>> (A) as that of a driver, driver's helper, loader, or mechanic; and
>>
>> (B) as affecting the safety of operation of motor vehicles weighing <u>10,000 pounds or less</u> in transportation on public highways in interstate or foreign commerce, . . . and
>
> (3) who <u>performs duties</u> on motor vehicles weighing <u>10,000 pounds or less</u>.

See Pub. L. No. 110–244, Title III, § 306(c) (2008) (emphasis added). The parties in this case dispute whether the Plaintiffs are "covered employees."

## C. BURDEN OF PROOF

In keeping with the FLSA's purpose of protecting workers from substandard wages, FLSA exemptions should be construed narrowly against the employer asserting them and their application limited to circumstances "plainly and unmistakably" within the terms of the exemption. Lawrence v. City of Phila., Pa., 527 F.3d 299, 310 (3rd Cir. 2008) (quoting Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392 (1960)); Cleveland v. City of L.A., 420 F.3d 981, 988 (9th Cir. 2005); Haro v. City of L.A., 745 F.3d 1249, 1256 (9th Cir. 2014). The employer bears the burden to establish that an exemption applies. Fezard v. United Cerebral Palsy of Cent. Ark., 809 F.3d 1006, 1010 (8th Cir. 2016); Allen v. Coil Tubing Servs., L.L.C., 755 F.3d 279, 283 (5th Cir. 2014); Childress v. Ozark Delivery of Mo. L.L.C., 95 F. Supp. 3d 1130, 1134 (W.D. Mo. 2015); Garcia v. W. Waste Servs., Inc., 969 F. Supp. 2d. 1252, 1256 (D. Idaho. 2013).

In the case of the MCA exemption, the TCA amendments do not alter the burden which remains on the employer. Roche v. S-3 Pump Service, Inc., 154 F. Supp. 3d 441, 446 (W.D. Tex. 2016). The TCA "narrowed the scope" of the MCA exemption, and the two cannot be read independently. LaCurtis v. Express Med. Transporters, Inc., 856 F.3d 571, 575 (8th Cir. 2017). It is the Defendants who claim the exemption in this case, and thus bear the burden. Any other conclusion would be at odds with the FLSA's purpose of protecting workers from substandard wages, and the well-established rule that FLSA exemptions are to be construed narrowly against the employer. The Court finds the cases cited by the Defendants, which apparently placed the burden on the employee, unpersuasive. Those courts offered no explanation and cited no case law to support doing so and did not analyze the issue. See Garcia, 969 F. Supp. 2d. at 1257; Aikins v. Warrior Energy Servs. Corp., No. 6:13-CV-54, 2015 WL 1221255, at *3 (S.D. Tex. Mar. 17, 2015); Lacurtis v. Express Med. Transporters, Inc., 189 F. Supp. 3d 903, 912 (E.D. Mo. 2016). The Court

7

agrees with the statement in *Aikens* that the burden issue is not terribly consequential as both parties have put forth evidence to support their positions. Aikins, No. 6:13-CV-54, 2015 WL 1221255, at n.3.

### D. COVERED EMPLOYEES

The primary issue presented in the cross-motions for summary judgment is whether the Plaintiffs are "covered employees" as that term is defined in the TCA. It is undisputed the Defendants are motor private carriers subject to the jurisdiction of the Secretary of Transportation and the Plaintiffs are or were employed by the Defendants. It is also undisputed the Plaintiffs performed duties as drivers or loaders and those duties affected the safety of operation of motor vehicles in interstate travel. There is also no dispute the Plaintiffs performed duties on a "mixed fleet," that being a fleet consisting of both small and large vehicles. For TCA purposes, small vehicles are those weighing 10,000 pounds or less, and large vehicles are those weighing more than 10,000 pounds. The weight of a particular vehicle is determined by reference to its gross vehicle weight rating ("GVWR"). McCall, 723 F.3d at 966. Thus, the question the Court must decide is how work on a "mixed fleet" should be treated under the TCA's definition of a "covered employee." The parties' positions on the issue offer stark contrasts. This is not surprising given the courts which have considered the "mixed fleet" issue are divided on the proper approach. See Wells v. FedEx Ground Package Sys., Inc., 979 F. Supp. 2d 1006, 1033 (E.D. Mo. 2013) rev'd and remanded on other grounds, 799 F.3d 995 (8th Cir. 2015). The Eighth Circuit Court of Appeals has not squarely addressed the issue.

The Defendants contend the issue is whether the Plaintiffs engaged in more than de minimis work on vehicles weighing more than 10,000 pounds. See Avery v. Chariots for Hire, 748 F. Supp.

2d 492, 500 (D. Md. 2010); Dalton v. Sabo, Inc., No. 09-358, 2010 WL 1325613, at *4 (D. Or. Apr. 1, 2010); Wells, 979 F. Supp. 2d at 1033; Hernandez v. Brink's, Inc., No. 08-20717, 2009 WL 113406, at *6 (S.D. Fla. Jan. 15, 2009); Leipolt v. All-Ways Contractors, Inc., No. 15-C-628, 2016 WL 2599125, at *4 (E.D. Wis. May 5, 2016); Jaramillo v. Garda, Inc., No. 12 C 662, 2012 WL 4955932, at *4 (N.D. Ill. Oct. 17, 2012). These cases place the focus on how much time was spent working on large vehicles and rely on Collins v. Heritage Wine Cellars, LTD, 589 F.3d 895 (7th Cir. 2009) and 29 C.F.R. § 782.2(b)((3) for support. In doing so, they effectively take "mixed fleet" work outside the scope of the TCA. As the courts in *Jaramillo* and *Leipolt* are in the Seventh Circuit, they were bound by the holding in *Collins*.

The Plaintiffs contend the issue is whether the Plaintiffs exclusively worked on vehicles weighing more than 10,000 pounds, thus making workers who spend any amount of time working on small vehicles "covered employees" for purposes of the TCA. See Schilling v. Schmidt Baking Co., Inc., 876 F.3d 596, 602 (4th Cir. 2017); Roche, 154 F. Supp. 3d at 448. Other cases relied on by the Plaintiffs phrase the issue slightly different by focusing on whether the workers spend more than a de minimis amount of time working on small vehicles. Childress, 95 F. Supp. 3d at 1137; Garcia, 969 F. Supp. 2d. at 1260; Aikins, 2015 WL 1221255, at *5-6; Pye v. Oil States Energy Services, LLC, 233 F. Supp. 3d 541, 554 (W.D. Tex. 2017). These cases relied upon the plain language of the TCA in framing the "mixed fleet" issue.

In the opinion of the Court, the Defendants, and those courts which have framed the issue in relation to how much time an employee spends working on large vehicles, have misconstrued the relevant issue. "Where a mixed fleet is involved, the issue for the court is whether the employee spends more than a de minimis amount of time operating vehicles that weigh less than 10,000 pounds." Childress, 95 F. Supp. 3d at 1137. The TCA specifically states that a worker who

9

performs duties on small vehicles "in whole or in part" is a "covered employee." Pub. L. No. 110–244, Title III, § 306(c). Thus, it logically follows that a worker whose performance of duties on small vehicles is more than de minimis is a "covered employee." See Garcia, 969 F. Supp. 2d at 1260.

The plain language of the TCA, which focuses on work performed "in whole or in part" on vehicles which weigh "10,000 pounds or less," dictates a focus on how much time was spent working on small vehicles. The better reasoned cases cited by the Plaintiffs clearly support the proposition that the plain language of the TCA requires workers who perform more than a de minimis amount of time working on small vehicles be considered "covered employees" who must be paid overtime for their efforts. As stated by the Fourth Circuit Court of Appeals, "[t]he text of the TCA plainly provides that employees working on mixed fleet vehicles are covered by the TCA exception." Schilling, 876 F.3d at 601. The structure of the TCA "makes clear that an employee need only work on smaller vehicles 'in part' to qualify for overtime compensation." Id. "There is nothing in the language or structure of the statute indicating that Congress intended to limit the reach of the TCA to exclude employees working on mixed fleets of vehicles." Id. at 602. The Fourth Circuit further noted that Congress could have taken mixed fleet work outside the scope of the TCA by defining "covered employee" as one who exclusively performs duties on small vehicles, but Congress chose not to do so. Id. The Court finds the opinion of the Fourth Circuit in *Schilling* particularly persuasive and adopts its reasoning.

In addition, the focus on the amount of work on large vehicles is inconsistent with the Department of Labor Field Assistance Bulletin No. 2010-2 which, by way of example, notes that an employee who performs duties exclusively on large vehicles is exempt and an employee who performs duties exclusively on small vehicles is non-exempt, while an employee who performs

duties on both large vehicles and small vehicles is non-exempt.

The Defendants reliance on 29 C.F.R. § 782.2(b)((3) is misplaced as those regulations address mixed duties involving safety of operation rather than a mixed fleet of small and large vehicles, and Section 782.2(b)((3) is at odds with Department of Labor Field Assistance Bulletin No. 2010-2. See Garcia, 969 F. Supp. 2d at 1260 (noting reliance on 29 C.F.R. § 782.2(b)((3) is "inconsistent with the plain language and purpose of the TCA").

The Court finds the Defendants reliance on *Collins* similarly misplaced. The Seventh Circuit in *Collins* relied solely on a policy statement that dividing jurisdiction over drivers would be burdensome. Collins, 589 F.3d at 901. But *Collins* made no mention of the TCA or "covered employees" and the case was decided in 2009, prior to the November 2010 issuance of Department of Labor Field Assistance Bulletin No. 2010-2. See McMaster v. Eastern Armored Services, Inc., 780 F.3d 167, 171 (3rd Cir. 2015) (rejecting *Collins* while noting history and policy cannot overcome "an express change to the statutory scheme"). Because it is undisputed the Plaintiffs all worked on a "mixed fleet" of large and small vehicles, and the plain language of the statute applies to duties performed "in whole or in part" on small vehicles, the Court finds as a matter of law, that the MCA exemption does not apply, and the Plaintiffs are entitled to the overtime they seek.

### E. GOOD FAITH

The Plaintiffs have also moved for summary judgment on the Defendants' good faith defense. The Defendants contend there remains a factual dispute as to whether the Defendants took affirmative steps to learn the requirements of the FLSA as it pertains to the Plaintiffs.

An employer who violates the FLSA is liable to the employee for unpaid wages or overtime and an additional equal amount as liquidated damages. 29 U.S.C. § 216(b). If, however, "the

11

employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of [the FLSA], the court may, in its sound discretion, award no liquidated damages . . . ." 29 U.S.C. § 260. The "good faith" requirement is a subjective standard where the employer must establish "an honest intention to ascertain and follow the dictates of the FLSA," and the "reasonable grounds" requirement is an objective standard that the employer's position was "objectively reasonable." Chao v. Barbeque Ventures, LLC, 547 F.3d 938, 942 (8th Cir. 2008). The employer bears the burden of proving he acted in good faith and had reasonable grounds, but the burden is high because single damages are the exception. Id. at 941-42. To avoid a liquidated damages award, the employer must show it took affirmative steps to learn the requirements of the FLSA, and the employer's position must be objectionably reasonable. Id. at 942.

The parties dispute whether a question of fact exists as to the good faith issue. Both parties cite to the deposition testimony of MBI corporate representative Charles Steffan in support of their position on whether the Defendants sought outside advice to learn the requirements of the FLSA as it applies to the Plaintiffs. See Docket No. 60-4.

The Court has carefully reviewed Steffan's deposition. The Court finds as a matter of law that Steffan's deposition testimony does not raise any issues of fact regarding the good faith defense. There is nothing in Steffan's testimony which suggests the due diligence performed by a law firm hired by MBI in 2011 in relation to the merger of MBI and HPI involved any FLSA analysis of the wireline operator position. Steffan references a report by the law firm but the Defendants have not made the report a part of the record. When Steffan was asked directly if he could point to any evidence the law firm evaluated whether the FLSA required the Defendants to pay the wireline operators overtime his answer was "I am not able to tell you." See Docket No. 60-4, p. 6;

12

Deposition p. 16:4-10. In addition, Steffan made it clear that the Defendants did not rely on any regulation, government agency ruling, or Department of Labor approvals or interpretations to support their decision not to pay wireline operators overtime on their bonuses. Steffan testified as follows:

> **Q.** And what I'm about to ask are a series of sort of technical questions, and -- and feel – if you don't know, it's fine, but I need to ask them for the record anyway. As the corporate representative on the issues of good faith and reasonable grounds, can you point me to any regulation that the company is relying upon in not paying overtime on the commissions received by wireline operators?
>
> **A.** I cannot.
>
> **Q.** Can you point me to any ruling from any governmental agency that the company is relying on in not paying overtime on the commissions received by wireline operators?
>
> **A.** I cannot.
>
> **Q.** And can you point me to any approvals and/or interpretations of the Department of Labor that the company is relying on in not paying overtime on the commissions received by wireline operators?
>
> **A.** No.
>
> **Q.** Since the lawsuit has been filed in this case, as I understand it there have been no changes in how wireline operators are paid; is that true?
>
> **A.** I believe that's the case, yes.
>
> **Q.** And specifically even to this day wireline operators are not paid overtime on their commissions; correct?
>
> **A.** I believe that's the case.

See Docket No. 60-4, p. 6; Deposition p. 19:22-20-24.

Any investigation into the FLSA requirements in relation to "mixed fleet" operations would have revealed Department of Labor Field Assistance Bulletin No. 2010-2 which was released in November 2010. Clearly, no such investigation was undertaken. Because the Defendants have

13

failed to demonstrate they undertook reasonable efforts to ascertain the requirements of the FLSA in relation to their wireline operators, the Plaintiffs are entitled to liquidated damages on their claims.

F.   **DECERTIFICATION**

The Defendants have moved the Court for decertification, in the event the Court denies their motion for summary judgment on the MCA exemption issue. In making their argument, the Defendants focus on the amount of time individual Plaintiffs spent working on large vehicles and contend that work was more than de minimis and requires an individualized analysis. As the Court has explained, the Defendants' focus on large vehicle work is misplaced. Since it is undisputed the Plaintiffs worked on a "mixed fleet" and "there is nothing in the language or structure of the statute indicating that Congress intended to limit the reach of the TCA to exclude employees working on mixed fleets of vehicles," there is no reason to decertify the class. Schilling, 876 F.3d at 602.

IV.   **CONCLUSION**

The Court has carefully reviewed the parties' submissions and the entire record, and concludes the Plaintiffs are "covered employees" within the meaning of the TCA and are thus entitled to the overtime compensation they seek. The determination of the amount of overtime pay the Plaintiffs are due is a fact question that will require a trial. Accordingly, the Defendants' motion for summary judgment (Docket No. 47) is **DENIED**, the Plaintiffs' motion for partial summary judgment (Docket No. 59) is **GRANTED**, the Plaintiffs' motion to strike (Docket No. 70) is **DENIED** as moot, the Defendants' motion for decertification (Docket No. 61) is **DENIED**, and the

motions for a hearing (Docket Nos. 62 and 63) are **DENIED**.

**IT IS SO ORDERED**.

Dated this 1st day of March, 2018.

                                                  */s/ Daniel L. Hovland*
                                                  Daniel L. Hovland, Chief Judge
                                                  United States District Court